Thank you, Mr. Chief Justice, and may it please the Court, over 50 years ago in Bruton v. United States, this Court held that the admission of a non-testifying defendant's confession that accuses another defendant in a joint trial violates the Confrontation Clause, even in the face of a limiting instruction, in light of the uniquely prejudicial effects that such a confession has on the jury. This Court has made clear that the Bruton Rule applies to a confession that has been redacted to avoid naming another defendant, where the jury is likely to infer that the confession implicated that defendant. The question presented today is whether the manner in which the redaction is carried out is dispositive of the application of the Bruton Rule. The Court should hold that it is not. In this case, the prosecution substituted phrases like the other person for a petitioner's name. But having done that, the prosecution used the confession functionally to identify Petitioner. The prosecution's questioning of the agent who took the confession left little doubt that the confessing defendant had named the other person. Petitioner was the only defendant who possibly could have been the other person. The prosecution described the confession as some of the most crucial testimony in the case. And having elicited detailed testimony that the other person had met up and lived with the confessing defendant, the prosecution proceeded to present evidence that Petitioner had done just that. In light of those considerations, it is likely, indeed inevitable, that the jury inferred that the confession here implicated Petitioner. In applying the Bruton Rule, lower courts have considered the broader context without any evident difficulty. And doing so appropriately protects the defendant's confrontation right while working minimal prejudice to the government. The government's alternative approach would draw arbitrary and formalistic distinctions and permit ready circumvention of the Bruton Rule, as this case illustrates. If Bruton is to mean anything, Petitioner is entitled to a new trial without the introduction of the unconfronted confession. I welcome the Court's questions. You said that the testimony, the redacted testimony, functionally identified Petitioner, and that the jury inferred that it would be the Petitioner. How is the inference and the functional identification testimonial here for a confrontation clause considerations? So I think we are all in agreement that the confrontation clause applies here such that if we were in an individual trial, Crawford would apply. And I would point in particular to this Court's decision in Melendez-Diaz, which made clear that for evidence to be testimonial, it need not be, on its face, directly accusatory against the defendant. This Court indicated that evidence that is hostile to a defendant's interests can qualify as evidence that is against the defendant. So just, I don't want to, excuse me for interrupting you, let's take a step back. Tell me exactly what is said in the testimony that directly speaks of your, of the Petitioner. As in gray, the confession here is directly accusatory, it's directly accusatory of someone. Well, I mean, that could be any of us. So you have to make the connection. How do you get from someone to Petitioner? Correct. In the testimony. Correct. And so this is, as in gray, a situation... Well, remember, I was in dissent in gray. I do remember that, but I will rely on the Court's reasoning in gray and explain to you why, if you think that gray is still the law, that gray applies here. In gray, this Court acknowledged that there was an additional step that would have to be taken, an inference that the individual whose name was redacted was in fact the defendant. And in that case, the Court had no trouble in saying that because there was only one defendant who could plausibly have been the individual who was redacted, that that inference could be drawn. And indeed, the Court went further and said that whenever you have a redaction that is apparent on its face, such a confession would categorically be excluded, even if there might be circumstances in which that inference would be less obvious. Our argument is that exactly the same reasoning applies here. And, of course, there is a factual difference, which is that the redaction was not apparent on its face. Our test recognizes that. Our submission is that the redaction here was pretty obvious by virtue of the way in which this confession came in. The confession in this case came in through the interviewing agent who testified. And over the course of many pages, and this is reproduced in our brief at pages 9 to 11 in the Joint Appendix from 74 to 77, the interviewing agent said that the confessing defendant, Stilwell, referred to another person. I think any juror with those repeated references to another person would wonder, first, why the interviewing agent didn't ask who the other person was, and, second, why there were all of these artificial references to another person. That is debatable, I guess. Maybe they will wonder, well, why are they saying another person if it was this guy? And it must be because it is somebody else that they haven't brought to trial. But you said if you don't prevail, Bruton would not mean anything. But, I mean, you recognize that we are talking about some kind of sliding scale. In some cases, and you argue that it is yours, it will be very clear who they are talking about. In others, it will be, you know, maybe an inference, maybe not, and a weak inference. In others, not. And if you accept that fact, then isn't it the question to what extent does an instruction remove or at least minify the concerns you're raising? Yes, and our fundamental submission here, Mr. Chief Justice, is that where it is likely that the jury will draw the inference that the confession implicated the non-confessing defendant, then the concerns of Bruton apply with full force. And the Court is well familiar with what those concerns are. The concern that a jury, once it concludes that the non-confessing defendant was identified in the confession, will not be able to put that confession out of its mind even in the face of a limiting instruction. Now, I would grant you, Mr. Chief Justice, that there are going to be cases where that inference is stronger and cases where that inference is weaker. In our cert briefing and then in our merits briefing, we note that some six federal courts of appeals and, in addition, many state courts have applied the approach that we are advocating here, an approach that appropriately considers the surrounding context in determining how likely it is that the jury is going to draw that inference. Now, notably, many courts, in applying that approach on particular facts, have concluded that the confession can nevertheless still be admitted. And I would point... But would that be... At trial, in your introductory statement, you referred to the manner in which redaction was carried out. But my understanding is that, at trial, the defense did not propose any alternative redaction. The position of the defense appears to have been that the confession could not be introduced at all, which meant that there had to be a separate trial. Is that correct? So, my colleagues at trial argued that there should be severance in this case. The issue of the admissibility of the confession was considered, as it often is in this context, together with a motion to sever in limine. And, of course, the law in the Second Circuit, which we are challenging here today, is that this sort of redaction is sufficient, that it is sufficient to use a placeholder. Well, I asked you really a simple factual question. Did the defense propose any alternative way of redacting the confession? So the defense didn't for the simple reason that, under the governing law, this redaction was sufficient. Now, under the legal rule that we are advocating now that we're before this court... Well, I think you're dancing around this question. Do you now propose an alternative way in which the confession could have been redacted? So we do believe, as we say in our reply brief, that the confession here could have been redacted further. And because the confession came in... And did you preserve that argument at trial? I don't see that you preserved it. You wanted a separate trial, and I don't know why you won't admit it. That's your position. Well, I don't think it's a matter of... So, first, Justice Alito, it's not a matter of preservation precisely because, under our rule, the government... If this court were to adopt our rule, consistent with the rule applied by other circuits but not the Second Circuit, the government would have various options as to how to comply with that rule. Now, obviously, our preferred option... And now this is an academic point because, of course, if this court were to vacate, there would be a new trial. But our preferred option then, as now, would be to have an individual trial in which it is undisputed this confession could not come in. The redaction here seems to be almost exactly the same as the redaction that the court in Gray said should have been applied in that case. The court said, why could the witness, instead of saying, delete it, delete it, why could the witness not, and I'm quoting, why could the witness not instead have said, quote, question, who was in the group that beat Stacy? Answer, me and a few other guys. That's just what was done here. And, Justice Alito, the court said that in the context of addressing the argument that it would not be feasible to redact the confession further. The court certainly did not suggest that the mere use of placeholders would always avoid a confrontation clause violation. And I would grant that this court's decision in Gray effectively left that question open. I would further note, though, Justice Alito, that when you look at a confession like that, a confession that just says, me and a few other guys, a jury would be much less likely to think that that confession had been redacted or, critically, to link that confession to a particular defendant. When you have a case involving multiple defendants, courts, even applying our approach, often say that the confession is admissible precisely because So is it when it's two defendants, then? It kind of seems to me that your rule leads to the conclusion that if you have only two defendants, because I have the same question as Justice Alito about me and a few other guys, the factual difference here is that there was one other guy. So is your rule, then, that it's not possible if you say, me and another guy, to ever try just two defendants together if you have a non-testifying confession? I think that it is one of the contextual factors. And when you look at what law courts have done, I think law courts have differentiated between cases where, for instance, you have a confession that refers to multiple people and there are multiple defendants on one end of the spectrum, and on the other end of the spectrum, a case like this where you refer to the other person, and there's only one person who that could plausibly be. But, Mr. Shamingham, in your reply brief when you were talking about how you could redact it further, I mean, I guess I'm kind of drilling down on Justice Alito's point here. It seems to me, without rewriting it to make it misleading so that there's no reference to there being another person in the car, you couldn't really, because there's a difference between substitution through a placeholder and then just kind of rewriting it so it doesn't represent the same thing. So it seems to me, at the end of the day, it boils down to you just can't try two defendants together if you have a non-testifying defendant in a confession. I don't think that that's true, Justice Barrett. And I would recognize that there are going to be cases where redactions, further redactions, are more feasible or less feasible. In this case, precisely because the confession came in through an interviewing agent, it was obviously not a verbatim account of the confession even to begin with. I want to pursue Justice Barrett's line of questioning just a little bit further, because you do rewrite the confession in a way that refers to no other person at all. And I wonder, does that implicate your co-defendants do process right to be able to say somebody else did it? And pointing a finger at somebody else is an important right of that defendant, too. You would eliminate that. And so it does seem to me that that drives to just exactly what Justice Barrett's suggesting, that in order to balance the rights of both of these defendants, if there's only two, you're always going to have to sever. What's wrong with that? I think that there could be cases, and I believe the government cites one such lower court case in its brief, where the manner of redaction could affect the rights of the confessing defendant. And that could be where — How could you possibly redact when there's only one other person potentially involved? Well, I don't think that that is true, for instance, on the facts of this case. Now, just to be clear — Tell me how. Tell me how. How would you redact it without — As we explain in our reply brief, what the government could have done is to have limited the agent's testimony to Stilwell's statements that he went to the Philippines, participated in the murder while he was there, and received payment for his role in the murder. Again, it eliminates any reference to any other person's involvement, and that implicates the other defendant's due process rights. I'm going to just try one more time. Have you got any other way you could redact, other than the way you suggest in your reply brief? Maybe that's another way of getting at the same question. So I'm not sure exactly how it would have affected Stilwell's due process rights in this instance. I'm pretty sure he wouldn't raise that objection, aren't you? But I'm not sure that it would have been a valid objection, Justice Gorsuch, because it's not entirely clear to me how that would compromise any of his defenses. And I would note that this is a rather artificial discussion here, because Stilwell, like Hunter, the other defendant in this case, effectively conceded his involvement in the murder. Sure. The sole defense in this case was the jurisdictional defense that there was not a sufficient nexus to the United States. Just to put a pin on it, you don't have another way to rewrite this confession? Well, it would be open to the government to come up with an alternative manner of redaction that does not make it likely that the jury would draw the inference  There are any number of ways in which the gist of what I said could be communicated, but the key point is that the reference to the other person would have to be removed. Now, I would also add one thing. That is a no, then. Well, I would add one thing, though, which is an important caveat. One of the alternatives that is available to the government is to introduce confessions,  and as we point out in this case, there were two things at play. Can I ask a separate line of questioning? I'm sorry. I think we've got the answer. We've exhausted that one. Isn't there some oddity about the fact that we think limiting instructions are enough when the defendant himself offers a confession, non-Mirandized confession, Harris, and it's used for impeachment purposes, and we tell the jury, you only consider it for impeachment purposes, and we treat them as competent to respect that line, even though that's probably the most powerful evidence you could possibly have in a confession by the defendant himself. And none of this applies. That's point one. Point two is none of this applies in a bench trial. We assume judges can take all this evidence. No confrontation problem arises, we're told. Judges are capable of respecting this line, but jurors somehow we treat them as lesser able. I don't know. You go to three years law school and you're able to follow rules that you aren't, 12 jurors aren't able to follow. So I think I would say two things in response to that, Justice Gorsuch. The first is that this court and lower court jurists have long recognized that this is a distinct context, because what you are asking the jury to do is to consider confessions, which have long been understood to be the most powerful form of evidence, as substantive evidence of guilt as to one defendant but not another. Why is it different in the Miranda context with the defendant's own words, his own confession, and we say, you can only consider that for impeachment purposes? Put it out of your mind with respect to guilt or innocence. But not as substantive evidence of guilt. Yes, I understand that. Why is that a difference that matters? I think because the prejudice in this context is so acute. And that is nothing novel in the law. Jurists such as Judge Hand. Is there any, and that's a functionalist argument, that jurists can't put this out of their mind, but they can put non-Mirandized confessions out of their mind. Do we have any social science to back that up, that distinction, that one is more impossible for a person to put out of his mind than the other? This court has long recognized that there are certain circumstances in which juries cannot be expected to perform that task. And it's not just the context of Bruton. In Jackson v. Deno, this court invalidated a Texas rule under which the jury was to consider the voluntariness of a confession. And the court concluded that the problem with that rule is that a jury, once it concluded that a confession was involuntary, would not be able to put it out of its mind. And I would actually point all the way back to this court's decision in Shepard v. United States, in which Justice Cardozo, writing for the court, said the same thing with regard to an instruction concerning a dying declaration, that that could not be admitted, even with a limiting instruction, solely as evidence of the dying declarant's state of mind. Mr. Shepard, can I add to that? Sorry, I'll just finish this up, Justice Jackson. It's prejudicial, right, as you said. It's just so prejudicial they can't put it out of their mind. And I had a question about that. On page 18 of your reply brief, you say that 403 wouldn't be sufficient to handle this when you're talking about severance, and you could say, you know, 403 might be some ground. We said the Sixth Amendment didn't cover this. But if you concede that 403 wouldn't cover it, then why would we say that it's so prejudicial on the sliding scale the Chief was referring to, that it should be kept out on Sixth Amendment grounds? I think we were just making the practical point, Justice Barrett, that if this court were to write a decision that said that the risk of prejudice in this context was not sufficient to trigger the Bruton Rule, then it would be very difficult as a practical matter for defendants to come in and make that argument under Rule 403. Would it be possible? Because, I mean, it seems to me, obviously, constitutional protection is greater than protection from the federal rules of evidence. So wouldn't it be possible to say that even if the Sixth Amendment doesn't apply, that 403 protection must still kick in, as it would in the Harris context? I think that it is possible, but I do think that there would be some real tension with the underlying rationale of Bruton, which is that this is a context in which, as a categorical matter, once the jury draws the inference, the risk of prejudice is so incredibly acute. Thank you. Yes, and I was just going to say, so then wouldn't we be effectively overruling Bruton if we were to hold otherwise? I mean, it seems like the heart of Bruton is that when you have a statement, and when you look at Bruton in combination, say, with Gray, when you have a statement that is not directly naming the defendant, the way, as the Chief Justice said, the jury instruction works is to ensure that it's not being used against him. Because the court says, don't use this against you. But in Bruton, we made clear that it's really impossible for a jury to do that. So if that's true, I don't see it as a matter of prejudice, necessarily. I see it as operationalizing the Confrontation Clause's requirement that you can't use evidence against a person that they can't interrogate. Well, I think that's exactly right, which is to say that I don't hear the government to dispute that there is a Confrontation Clause violation. To get back to Justice Thomas's first question, at the moment at which a co-defendant's confession is admitted, and yet the defendant, the non-confessing defendant, does not have the ability to cross-examine, so the real question in some sense is whether to create an exception where a limiting instruction is delivered. And I think that the fundamental problem with the government's proposed approach here is that I think it gives rise to the very risk of circumvention that this case well illustrates. This was a circumstance... Before you go on, I think that's really important, and I just want to understand. So you're saying we're in the world of exception because at the beginning, with respect to the Confrontation Clause, to the extent that a confession is being introduced, the defendant has a constitutional right to cross-examine the person who made that confession. But because the government made the choice to try these people together, there isn't that right. And the question is, can we use the confession under those circumstances? And this is an exception that would allow for the use. Is that what you're saying? And I would say three things in response to that. The first is that if one were minded to think about this as an originalist matter, I really do think that the government is approaching this as essentially an exception to the underlying Confrontation Clause right, and it is therefore incumbent on the government to point to some original evidence. The limiting instructions were viewed as sufficient to cure what would otherwise be a Confrontation Clause problem, and obviously there is no such evidence. And so that in a way, maybe it doesn't, but I thought these questions about the extent to which you have to come up with some redaction language and it's on you to figure out how to redact this concession seems odd to me insofar as it is the government that is trying to get this evidence in. The defendant's position is sever the trial or don't introduce the evidence. So I don't see it as a situation in which the defendant has to offer to the court or anyone else language that would successfully allow for the evidence to be introduced against him. And that brings me to my second point, which also I think completes my answer to Justice Gorsuch's question. And that is that what makes this different from run-of-the-mill evidentiary context where you're talking about admitting evidence for one purpose but not another, is that the government has alternative options. And obviously the most significant of those options is the ability to try the confessing defendant separately. But there are options short of that. There is the option of making further redactions, which sometimes will come with evidentiary costs, but it is a strategic option available to the government. And up to them to propose. And the third option that is available to the government under a contextual approach is that at least in some cases there may be circumstances in which the confession can be admitted as long as the government doesn't point to contextual evidence that confirms the inference that the confession implicated the non-confessing defendant. Can I go back to your main point and unpackage it just a little bit further? We have no problem accepting that we can't have hearsay, testimony, establishing any fact in a trial, correct? Unless there's a well-established hearsay exception. The rule of Crawford. And that doesn't matter whether the statement implicates the defendant or not, meaning it doesn't have to say, John Doe did X. If the government wanted to get in evidence about what color the light was at the time of the incident, it can't have a witness swear to it and somebody else come into the trial and testify about it. So they can't use... We think of confrontation as somebody saying he did it. That's not what the Confrontation Clause is about. The Confrontation Clause is about don't present any kind of evidence at a trial without a witness, correct? Correct. And that is the teaching of Melendez-Diaz, which addressed squarely this point. Exactly. All right, so let's go back to square one. Bruce Crawford, our seminal case on testifying defendants, said you can't have admission of hearsay evidence at trial unless there was a well-established exception at the founding. Correct? Correct. And you were explaining to Justice Thomas that at the founding, there hardly were, if ever, any joint trials, correct? There were not many, certainly not so many as there are today. And in the ones there were, most defendants didn't have attorneys, correct? Correct. So they were basically testifying anyway. Correct. So the first time we're talking about a limiting instruction being an exception to the Confrontation Clause was not at the founding. Correct. And indeed, jury instructions as we know them today were not really a thing at the time of the founding either. Exactly. And so I think what we're left with is really the question of how to operationalize Bruton and what would constitute an administrative rule. How to operationalize Crawford, Bruton, and the accepted wisdom that a prosecutor can't use hearsay against a defendant. I think what some of my colleagues... Let me finish, okay? Because I'm trying to get the concept out. What my colleagues are saying is this is not being used against the defendant. Hence, if he's not named, it's not used against him. But what was the insight of Bruton? Now you can pick up where I've left off. Well, I answered that question. Yes, and I'll be brief. This court crossed that bridge even in Richardson where the court acknowledged that there could be a Confrontation Clause problem even in the case of a statement that had been redacted to eliminate any reference to the non-confessing defendant. And that is consistent with Melendez-Diaz. Our fundamental submission to the court today is that unless this court wants to revisit Bruton, and we would submit that that would be profoundly wrong as an originalist matter, then the question becomes how to implement the Bruton Rule in a way that respects... All right, so now I thought there were two tests involved. The Second Circuit's four-corner test and the contextual test that the majority of Circuit 6 use and other states use. Correct. So let's narrow in on that question and try to sort of summarize why we should take one approach as opposed to another approach. And let me talk about our proposed approach, which is consistent with the approach that you say. I don't want yours. I really don't want yours. I want a test that's simple enough to articulate. Yours is, like, multifactored. I see it as three questions, and Justice Barrett kind of looked at it and saw the same thing, which is the three points are really the content of the redacted confession. Does it really take out a suggestion that it's this defendant in any way? The content of the indictment. What's the charge? Is it you and another person? And I think that's important. And the second is the number of the defendants. That's what most of the courts are doing. Correct? Yes, that's right. And I think that that's broadly consistent with our test. The only two things that we would add are the prosecution's use of the confession and, as we note, the prosecution... My colleagues are so worried about that because they're afraid that you're going to have a mini trial before the trial. Well, but I think that that is obviously something that is within the prosecution's control. And our fundamental submission is that however you characterize the exact list of factors that the lower courts have applied, the ones that you've identified are the ones that have been paramount, and in particular, the number of defendants. Thank you, counsel. Justice Thomas? Would you have been satisfied if Stilwell had simply taken the stand? There would have been the ability to confront him if he did not invoke his Fifth Amendment privilege against self-incrimination. Then there would have been the ability to examine him, yes. And name the petitioner? If he had named the petitioner but was available for cross-examination, then the confrontation right would be fully vindicated. Justice Alito? Mr. Schamingen, my colleagues' questions seem to me to have led you into deeper and deeper water, and I want to see whether you really want to go there. Do you want us to examine the question whether Bruton was consistent with the original meaning of the Sixth Amendment? Nobody is asking you to do that. My submission is simply that if you did, we believe that our interpretation would be more consistent with the evidence, certainly at the time of the founding and even in the immediate aftermath of the founding. Do you want us to do that? Well, we are obviously not asking you to reconsider Bruton. I think that's a question for my friend, Ms. Flynn. Well, I thought you... Maybe I misunderstood your answer to one of the questions. I thought you agreed that ruling against you would overrule Bruton. Did you agree to that? I think what I would say, consistent with what Justice Jackson suggested in her question, is that to adopt an approach like the government's would undo Bruton in practical effect. And those are not my words. Those are the words of Judge Easterbrook in his opinion for the Seventh Circuit in Hoover, highlighting a very similar situation to the situation... Do you think that Richardson overruled Bruton? No, certainly not, because Richardson, as this court explained in Gray, simply recognized that in a circumstance in which a confession has been redacted to eliminate any accusation against another person, the Bruton rule falls out of the equation. And the mere fact that that confession could be evidence that is used against a defendant when linked with other evidence was not sufficient to trigger Bruton. We have no complaint with that rule, but we simply think that when you have a situation where you have a confession that is directly accusatory of someone, then you're in the world not of Richardson, but in the world of Gray. And it is the government that is asking this court to draw an artificial distinction between a confession that says brackets the other person and a confession that simply says the other person. Didn't Justice Scalia's opinion for the court in Richardson say that ordinarily a witness whose testimony is introduced at a joint trial is not considered to be a witness against a defendant if the jury is instructed to consider that testimony only against a co-defendant? So if that's the correct understanding of the Confrontation Clause, the question is not whether this case involves an exception to the Confrontation Clause, but whether it applies at all on the theory that the person who made the confession is not a witness within the meaning of the Sixth Amendment. Do you disagree with that statement in Richardson? I think that the better way to understand it is the way that I suggested earlier, which is that the confrontation right is triggered, the Confrontation Clause problem exists at the point at which the defendant does not have the ability to confront the witness. And again, I think that it would be hard to understand Richardson as a case where, in the absence of a limiting instruction, there would still be no confrontation problem, particularly in the wake of this Court's decision in Crawford. Okay, one final question about Gray. Isn't it true that in Gray, the Court said, the inferences at issue here involve statements that, and I'm putting in an ellipsis here, a jury ordinarily could make immediately, even were the confession the very first item introduced at trial? That seems to be a pretty clear rule, and it wouldn't help you here. What do you make of that? That was just an offhand remark we shouldn't pay any attention to? No, I think that that actually does help us here for the simple reason that all of the considerations that we've discussed, including the considerations that I discussed in my earlier colloquy with Justice Sotomayor, are structural considerations of the sort that a court can comfortably consider in limine. The only potential exception to that is the trial evidence, which was significant in this case because the trial evidence corroborated the other details in the witness's statement, namely that my client, Petitioner, met up and lived with the confessing defendant in the Philippines. And as we point out, as long as this court limits that consideration to the evidence that the government intends to put on in its case in chief, it addresses the concern in Richardson that evidence that comes in after the fact obviously could not be taken into account in an eliminated termination, and lower courts have had no problem administering that standard. Thank you. Justice Sotomayor? No, thank you. Justice Kagan? I'd also like to ask you about Richardson, Mr. Shanmugam. I think you characterized the holding of Richardson completely accurately, but there is a good deal of language in Richardson which suggests, I would say, some skepticism about contextual approaches and about the need to show evidentiary linkages, and your approach is a contextual approach. I mean, there's no doubt about that. And some of your amici actually suggest more bright-line approaches to the problem. So I guess what I would like you to speak about for a bit is why a contextual approach, how does that fit with Richardson, and how are you going to make it work? Sure. So Richardson, first and foremost, obviously predated this court's decision in Gray. In Richardson, the court specifically left open the question that this court decided in Gray, and of course in Gray itself, the court adopted an approach that requires some consideration of evidence, because after all, in order to make the determination that a redacted confession identifies a defendant, an inference has to be drawn, and even the government recognizes that in cases involving, for instance, nicknames, you're going to have to look to the trial evidence to determine whether or not that nickname implicates a particular defendant. I guess what I would say in terms of the administration of this, and I would point the court in particular to the NAFD amicus brief, which is all about this, is that we've now had 25 years of experience since Gray, and almost instantly, once Gray was decided, courts of appeals and state courts started wrestling with exactly the question presented here, because taking this court's cue that further redactions could be feasible, of course prosecutors started doing that. And I think lower courts have really had no difficulty. There's no evidence. The government doesn't point to any cases where lower courts say this is a mess, this needs to be cleaned up. If they had, we might have pointed to that in our cert petition. Quite to the contrary, lower courts have had no difficulty applying the rule, and parenthetically, in applying the rule sometimes in a way that favors the government, and I would point in particular to the Straker case from the D.C. Circuit, which was a case in which the government prevailed because of the large number of defendants involved. And I would note that the number of defendants is an important consideration, and the second most important consideration is the manner in which the confession comes in. And I think you could have a confession that contains a passing reference to a few other guys on one end of the spectrum, and a confession like this one, on the other hand, where you have references to another person over many, many pages. And I think the more you have those references, the more details you have about what the other person did, which belies the government's weak suggestion that the jury could conclude that the defendant was somehow protecting another individual, the more the jury is going to draw the inference that a redaction has taken place here. And so I don't think that lower courts have had any difficulty applying this approach. It simply requires trial judges to do what they do every day, which is to apply common sense to determine whether the confession, in fact, even as redacted, functionally identifies the non-confessing defendant. Mr. Scorsese? Mr. Kavanaugh? Just reading Gray itself and staying within Gray, its concern seems to be the obvious blanks or indication of redaction, and that's it on pages 196 and 197 of Gray. Why isn't that the best way to read Gray? I would grant Justice Kavanaugh that in Gray itself, what I think the court ultimately said is that where a redaction is apparent on the face of the confession, it is essentially categorically likely that the jury would draw the inference that the confession implicated the non-confessing defendant. And the court, I think, recognized that that would often and ordinarily be the case, but that it might not always be the case. And so that's why I think that the fundamental teaching of Gray is that it's really that latter inquiry that is the fundamental inquiry. How likely is it that the jury is going to draw that inference? And, Justice Kavanaugh, I know a question you're always fond of asking at oral argument is, you know, what adjective do you want to use in the opinion? Is it likely? Is it, you know, does it have to be a strong or obvious inference? And I think what I would say to you is that on the facts of this case, that doesn't really matter. And lower courts have used different adjectives as to how strong that inference needs to be. But in a case like this where you have a lengthy confession with the repeated references to the other person, the prosecution's use of the confession, the fact that there was only one defendant it could possibly be, and then critically, the introduction of this trial evidence that linked petitioner to the other details in the confession, that this is a circumstance in which it is as near obvious as it could be in the absence of a facially apparent redaction. But isn't this an extension of Gray? In other words, Gray is trying to keep itself consistent with Richardson as Justice Kagan was raising about Richardson. So Gray is trying to stay within Richardson but says, well, here's one little aspect of how this confession worked that's problematic and had a blank Senate. And it's so long, and then it proposes an alternative that doesn't have the blanks and refers to a few other guys. And that's kind of all Gray says, I think. So I take your point that we could go further, but I'm not sure Gray itself gets you there. Well, I think my point is simply that the reasoning of Gray, I think, more strongly supports our approach than the government's approach. And I would recognize that this is a fact pattern that falls somewhere between Gray and Richardson. But I would submit for the reasons that I gave in my last answer that this is much closer to Gray than Richardson. And I think that this court can trust lower courts to police that because there's no sign of difficulty, again, in a majority of the courts of appeals who have considered this issue. There's some form of the rule that we are advocating has been adopted. We have an amicus brief from a lot of states, a real cross-section of states, saying this would be a huge problem. I mean, maybe in the federal courts, some of the federal courts of appeals have adjusted, but they're saying in the states that this could be a real problem. I have no doubt that prosecutors would much prefer to have a rule that permits the use of confessions in precisely the manner that they were used here. But notably, as we point out in our reply brief, we point to at least three states that signed that amicus brief where the contextual approach that we are advocating has been applied. You would expect them or the United States to point to some difficulty in administration. But quite to the contrary, courts have applied this approach, they have applied it overwhelmingly in the eliminate context when they are considering the issue of suppression together with the issue of severance. And again, they've had no difficulty doing it. The government has often prevailed. And there will be cases in which there is harmless error after the fact. Thank you. Justice Barrett? Question about history. So I agree with you that the history that you and the government have cited is not from the founding era, and so I don't think it's determinative of the question. I understand one reason for that, and you were pointing this out to Justice Sotomayor, that jury instructions weren't a thing at the time. But I just want to clarify, even if there were no cases that were talking about redaction, were there cases at the time where they just admitted it without redacting it, kind of on the theory that this wasn't a confrontation clause violation? So the general rule was no, that they were not admissible, and we cite Tong's case, and I think Audley's case is the other dusty 17th century English precedent that I would cite for that proposition. There was certainly some degree of ongoing dispute about that. I don't want to suggest that the case law was unidirectional, but I think part of the problem is that even when you turn to the 19th century case law, there were many sources, both treatises and English cases that contemplated redactions, but they didn't really get into the details of exactly how the redaction should take place, never mind whether redactions would be sufficient in conjunction with limiting instructions. And really, in the American system, all we really have is a scattering of late 19th century cases that don't really address the confrontation clause issues specifically. So I just think that this is a circumstance in which if the court is willing to abide by the Bruton rule, and again, we've had 50 years of experience in countless decisions from this court and lower courts applying it, the question really becomes how best to implicate the fundamental insight of Bruton, which is that confessions are a different kind of evidence where limiting instructions are insufficient. I want to ask a question about administrability. So do you think I'm right in saying or understanding that even if we adopted the government's approach, it wouldn't eliminate the administrability problem because presumably you still have a 403 objection, and 403 objections will be hashed out and eliminated. The district judge might say, I'm going to not rule on that now. We'll see how things develop. Or to adjudicate the 403 objection, presumably is going to be eliciting exactly the kinds of information that you say is relevant here, about context, et cetera. And you have the further complexity, as you will all remember from your time as a court of appeals judge, that those decisions are reviewed only for abuse of discretion. And so I would say that... All right, I'm not asking... I mean, I think you're sliding into how much protection it gives the defendant because the Sixth Amendment has a more exacting standard of review, whereas obviously 403 being it's an abuse of discretion standard. But I'm asking about administrability. Well, and I was just making that point in conjunction with the fact that for purposes of the development of the law, the abuse of discretion standard is a complicating factor. But above and beyond that, I think I would submit, and you're going to be hearing from Ms. Flynn presently so she can elaborate on this, the government's test here is not a terribly clear test. I think that what the government itself acknowledges is that there will be circumstances in which certain types of identification, the use of nicknames, the use of, quote, close physical descriptions, will be sufficient to come within the scope of the rule. And further, that in making the determination about whether that's enough for an identification, you have to look to evidence because there can be cases where there are disputes about whether a defendant goes under a particular nickname. So I think that there are going to be administrability concerns regardless. Our submission is simply that there's no evidence that our predominant approach has caused those concerns. Justice Jackson? So can I just have you give us your ask as cleanly as possible? Because you say that the lower courts have no problem, that they seem to be doing it fine, but you're the petitioner here. And so I guess you're saying that the Second Circuit's Four Corners rule is erroneous and that all we would need to say is something about don't just look at the face of the confession. Courts can also consider the rest of the evidence at trial and the inferences that a jury could draw as they ordinarily do in these other places. Is that what you're asking us to hold? So our fundamental ask for the court is that the court should hold, and we would submit that this is entirely consistent with the line of cases leading up to Gray, that the fundamental question is whether it is likely that the jury would infer that a redacted confession identified the non-confessing defendant as an accomplice. And in making that determination, a court can consider both structural and evidentiary factors. And the factors that we emphasize, and I do think this is consistent with what Justice Sotomayor was suggesting, were, first, the number of defendants, second, the confession itself and the manner in which the confession was presented, third, the prosecution's use of the confession. Those are the structural considerations. And then fourth, the presentation of evidence, not generically evidence of the defendant's guilt, but evidence that specifically links the defendant to details in the confession. So here, the evidence that Petitioner met up with and lived with Stillwell, Stillwell, of course, having testified that the other person did those things. And I would submit that all of that is consistent with what the lower courts have been doing, again, without any difficulties in administration. One final thing. With respect to the government's options, at one point you said, this is not going to be a terrible problem for the government because they have several options. And I got two of them, and I think I got the third, but I just wanted to be clear on it. You said the government could not introduce the statement. This is the Confrontation Clause problem. They could not introduce the statement. That's one. They could not try these people together and introduce the statement only in the confessing defendant's trial. That's two. And then I thought the third option was something like the government could not underscore or emphasize evidence in their joint trial that would bolster the inference that we don't think the jury is entitled to draw. Yes, that's correct. So maybe this is a different case, that we still have all of the structural considerations here if the government doesn't present the trial evidence that specifically linked my client to the details in the confession. And I would note that there actually is a fourth option that has been used in the Bruton context, and that is the option of empaneling two juries, one of which would not be present at the time of the introduction of the confession. That practice seems to have fallen into relative dissuaditude, but it's a practice that courts have used, including in some relatively high-profile cases. Thank you. Thank you, counsel. Thank you. Ms. Flynn? Mr. Chief Justice, and may it please the Court, if the jury is instructed not to consider a piece of evidence against a criminal defendant, and the jury follows that instruction, then there is no confrontation clause problem. This follows from the bedrock principle underlying all jury trials in our legal system. The Bruton exception to that principle simply holds that when it comes to a discrete category of statements, testimonial confessions by co-defendants that expressly name another defendant or are otherwise facially incriminating, we will no longer presume that the jury can obey that instruction. But this Court has taken care to treat the Bruton exception as narrow, and it has repeatedly declined to extend it. The Court should decline Petitioner's request here, too. First, confessions that replace the defendant's name with a natural-sounding noun or pronoun do not give rise to an overwhelming probability of juror disobedience. As this Court already reasoned in Richardson and reaffirmed in Gray, confessions that incriminate another defendant only inferentially, through potential connections to other evidence at trial, do not qualify for Bruton's prophylactic treatment. In fact, as has been discussed this morning already, this Court already approved of a confession like this in Gray, one that was modified there to refer to other guys who also committed the crime alongside the confessing defendant. And Petitioner's surrounding context test gives rise to the same practical problems this Court already identified in Richardson and deemed intolerable. Pretrial discovery proceedings, the risk of appellate reversals under a totality-of-the-circumstances standard, and the reality that, to avoid these problems, prosecutors will often be forced to forego confessions or joint trials. As this Court has put it, that price is too high. Petitioner's unprincipled standard will invite erosion of the jury instruction presumption, lack support in the common law, and will create significant problems for the administration of criminal justice in the federal courts as well as state courts across the country. I welcome the Court's questions. Ms. Flynn, much of your argument sounds like Justice White's dissent in Bruton. And there's been some suggestion that if the Court, if we rule your way, if we are, in effect, overruling or undercutting Bruton, would you think it would be, do you think it would be more straightforward to do precisely that? And are you asking us to do that? We are not asking you to overrule Bruton, and we don't have any need to ask you to overrule Bruton because, especially as clarified by Richardson and Gray, Bruton represents a workable, bright-line standard that prosecutors and trial courts across the country can administer. It's a workable accommodation of competing interests in this area. But I do, of course, in our brief, emphasize Bruton is an exception to the presumption that this Court follows everywhere else when it comes to difficult questions that jurors have to deal with in the course of deciding trials. And I think this Court has, while adhering to Bruton, recognized that its logic doesn't expand, for instance, to the circumstance that Justice Gorsuch brought up in Harris v. New York, where it's the defendant's own confession. I'm sorry. I can name others, but I think you get the gist. Okay. May I give you a hypothetical? So John and Mary go out, and they rob Bill. And they're found out, and they're put on trial, and they're put on trial together. And John has confessed. He said, let's say he said, Mary and I went out and robbed Bill. Now, that's obviously inadmissible under Bruton, correct? Correct. And then suppose, instead, there's something that says, Redacted and I went out and robbed Bill. That's obviously admissible under Gray. Inadmissible under Gray. Inadmissible under Gray. But it's neither of those two things. Instead, the confession says, She and I went out and robbed Bill. Or it says, The woman and I went out and robbed Bill. What do we do with that? Because you would have to look outside the corners of the statement itself and look at the rest of the evidence at trial to form the inferential connection that incriminates the other defendant on trial? No, that's not a Bruton issue. Now, I would say that you phrased that as the woman and I robbed, I forget who the victim's name was, but robbed the victim. That could well be a circumstance where the trial court, in ruling in a presumptive severance motion, could decide that further redactions ought to be made as part of its authority to craft a non-severance remedy, but we don't think it's a constitutional violation. Yeah. I mean, so you're saying that, well, you know, look, I mean, the court could try to do something about that, suggests what the issue is, right? In the hypothetical I gave you, and it's a stylized one, for sure it is, but it's just as good to say the woman and I went out and robbed Bill as it is to say Mary, the person sitting on my left, went out and robbed Bill in that case, right? It does the same thing. It identifies the person. I would respectfully disagree. I think the woman and I does not, is not the same thing as a direct accusation of the kind this court was confronting in Bruton, where there was zero ambiguity about who the co-defendant was naming, and that is what the court sort of honed in on as the triggering condition for this very unique rule where we're not going to assume the limiting instruction can do the work to keep the jury from thinking about what this piece of evidence means for others. I think Gray is just against you there, right? Gray says you can't do redacted and I went out and robbed Bill, and then Gray talks about why that is, and it says, look, we know that Richardson talked about inferences, but there are different kinds of inferences, and where you can just look at a confession and infer pretty much immediately, pretty much automatically, even though there's no name, and it's not just redacted, right? It's like the one-eyed man or using a nickname or so forth, right? So why doesn't she or the woman serve that exact same purpose? Well, there are a few things in there that I'd like to address if I could, but to first focus on Gray and what reasoning it used to get to the holding in that case, of course I will grant that Gray said that some inferences are the kind of inference that we think can create a Bruton problem, but the court was very careful to say we're not talking here about the kind of inference where you have to look at the rest of the trial evidence. It's just the difference between I am looking at this redacted statement where there is zero ambiguity that this has been changed. It says redacted, redacted, blank, blank, and the juror just has to make an inference of what's the reason for that. And the Gray court said the juror can just look up across the courtroom and see the defendant there, and in most circumstances, the juror will immediately draw that connection. But that's not the same... Why isn't the same connection when it's somebody or another person or she? I mean, jurors can't be expected to follow limiting instructions with respect to delete, delete, delete. Why can they be expected to follow limiting instructions when it comes to somebody, somebody else, and somebody else still? Because for the same reasoning that this court used in Richardson, explaining why... Well, Richardson had a footnote, five maybe, I don't remember, that said that there's no somebody else referred to anywhere in the confession. So it would take trial evidence to draw that link. Here, you're asking us to go a step further than Richardson and say there is a reference to somebody else, but using another word other than the name is better than using a deletion, deletion, deletion. And I guess I'm stuck where Justice Kagan is, and I'm not sure I understand the rationale for that. If we're talking about the functional capacity of jurors to distinguish and follow limiting instructions in the law given to them, we're told they can't follow it when it's delete, delete, delete. You're asking us to say they can when it's somebody and somebody else, and I guess I'm just stuck. Right, and I would point you to page 208 of Richardson and also the footnote on that page of the opinion where the court said we fully grant that this confession could have been incriminating or would have been incriminating if the jury disregarded its instruction. But the point at which it would have become incriminating would be if the jury matched up what was in the confession with what else they heard in trial. That's the moment at which if the jury makes the connection at all, it will happen later. But here's what Gray says at page 196. It says the inferences at issue here, and it's really distinguishing Richardson, right? It said, yeah, Richardson talks about some inferences, but it says the inferences at issue here involve statements that despite redaction obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately even were the confession the very first item introduced to trial. And what I'm suggesting is that there are cases like that. You could have a very high bar as to how immediate or how strong the inference has to be, but acknowledge that, look, I mean, it just, you know, you can't take the law seriously when it says redacted and I went down and robbed Bill is inadmissible, but the woman and I went down and robbed Bill can be brought in. The key difference between a case like this and a Gray case is that in Gray, the jury is unequivocally told this confession has been changed. Here, this could have been something that the defendant actually said, or here where it's actually a paraphrase of what the confessing defendant said. And why wouldn't that be a confrontation clause problem even if the defendant said exactly that? Why would there be no confrontation clause problem? You still need the limiting instruction either way so long as you have a testimonial confession. So, yes, you would need the limiting instruction, but no, I don't think it would be a prudent problem because there's not a co-defendant, the equivalent of a co-defendant, standing up in the courtroom and making a direct accusation against the person sitting next to them. But how is that consistent with Melendez, the Melendez case, Melendez-Diaz? I thought under Melendez-Diaz, you didn't need to have the evidence exactly name the person or be directly incriminating in order to cause the confrontation clause issue. I fully agree with that, Justice Jackson, and that's why you need the limiting instruction to say no matter what... If this confession said nothing about anybody else with Mr Stilwell, you would still need the limiting instruction. No, no, no, I'm not asking about when you need the limiting instruction. I'm just asking the confession on its face says, me and another person did X, or me and the woman robbed John. It doesn't say her name. Yes. I thought under Melendez-Diaz, it would still cause a confrontation problem. Setting aside how we cure it with a limiting instruction or not, because to the extent that the government introduced it against the defendant, it itself did not need to be directly incriminating. But if we're not introducing it against the defendant then there's no confrontation clause problem. What we're talking about with Bruton cases, and Bruton itself even says, if evidence is introduced in a joint trial just against the confessing defendant and not against the other one, and there's a limiting instruction telling the jury this is only evidence as to that defendant, not the other, and the jury follows that instruction, there's no confrontation clause problem because it's as if the evidence never came into the other person's trial in the first place. What Bruton says is that sometimes in certain narrow circumstances, or at least it's clarified that it's later decisions, we don't trust juries to follow that limiting instruction and it's as if the limiting instruction has been knocked out. Right. And so Justice Kagan asks, why isn't this one of those times? Right. And if I could try to finish my answer about why Gray is different. As I mentioned, in Gray circumstances, there's no ambiguity about whether the defendant actually named somebody. It's just a question of why that name was taken out. In this situation, there's at least the initial ambiguity about whether a name was even provided. And as a matter of the real world, confessing defendants don't name names quite frequently that might be related to why they're going to trial and they didn't plead out. And so if we agree that if no accusation was in fact made by a confessing defendant where they just referred, for instance, they said something like, I killed her but somebody else helped me, if we think that can come in because there's no accusation made against somebody else, then our position here is that we ought to be able to redact a statement to make it resemble a confession like that to get rid of the direct accusation and the facial incrimination that Bruton was targeting. I'm sorry. You presume that you're not using the statement against the defendant. But contextually, how about the situation? There's been examples of this in the case law. I got a confession from somebody. He said he and someone else did this. So it's not a she. And then the detective says, after the conversation, I went and investigated the co-defendant. You're using the confession, aren't you? You're using the confession to have the police officer say, I investigated this individual. So why isn't that the use against the defendant? Contrary to the instruction. Or how about, and I'll give you this example, the most important piece of evidence is this confession. Now, jurors, the confession says, this Stilwell and someone else did X, Y, and Z. This is the proof we have to show you why X, Y, and Z happened. I'm using the confession to prove X, Y, and Z happened, in this order, in this way. Isn't that use against the defendant? And why isn't that a Bruton problem? I think if the prosecution takes a confession that's only admissible against one defendant and refers to that confession in describing why the other defendant is guilty, that's the impermissible use of a Bruton confession that effectively attempts to undo the effect of the limiting instruction. And this is what the court said in Richardson near the end of its opinion. Exactly. And so the point is that you can't just rely on the four corners. When a court is being asked to look at a confession, it does need some contextual understanding and some contextual testing to ensure that the confession's not being used improperly. Correct? No, because I think with the prosecutorial attempt to undo the limiting instruction scenarios, like in Richardson and also the one the court mentioned in Gray, you just have to look at, basically, was there prosecutorial misconduct during the opening or closing such that they used the confession and told the jury explicitly to use it against somebody who it wasn't supposed to be admissible against? Or do they take a detail that was only in the confession and use that to help prove another defendant's guilt? That's a different sort of variant of confrontation clause problem. And I think the court treated it that way as Richardson. But just the fact that we can have error based on prosecutorial arguments, that's a separate inquiry. I don't think that militates towards having an all context considered standard for deciding whether there was a brutal violation in terms of a redacted statement. Counsel, I thought I would hear a lot more this morning about what Justice Sotomayor just mentioned. That might have been the first time, about the four corners issue. What is the government's position on that? Is the Second Circuit rule, which I understand means when you're addressing this question, you look only at the four corners of the statement. Does the government think that's correct? We think the standard is what this court said in gray, which is a statement that's facially incriminating. So yes, in the vast majority of circumstances, that's the four corners of the statement. I mean, we have not disputed in prior cases, and we're not disputing here, that things like nicknames, functional equivalents of a name, count. But that's partly because this court's also looked at the practical ramifications of what comes within the Bruton rule. And we think lower courts have never had a problem with making sure to redact things like nicknames, or initials, or something like that. And I don't think it follows from the concession we've made after that inch that you should go to the full mile, too. That's just bringing all of the context and making it after the fact inquiry on appeal about whether or not there was a violation. Well, that's right. I didn't understand the rule simply to be, you can say this is his nickname. I thought it meant you get into the whole point about, well, depending upon the rest of the evidence, it could be read this way. But if you look at this, it could be read the other way. I mean, is that not the right? That's not how the Second Circuit applies to the Four Corners rule? I don't understand the Second Circuit to have a different rule about nicknames. But it's also possible that these cases just don't come up, because there's never any problem in identifying a nickname in a redacted concession. And courts will readily instruct the government to take that out, not allow the government to put it in. And that can all be done. If not under a Bruton constitutional rule, it's just part of the Rule 14 severance inquiry, which we submit is a better way to think about a lot of these questions. Because in that context, and with rules of evidence and rules of criminal procedure generally, you give more leeway to the states as well to figure out their solutions to these problems to balance the competing interests. Can I ask a question about our precedents? Seems like Bruton adopted a rule. Richardson certainly didn't want to expand that and drew a line rejecting contextual implication and drew that line. And then Gray seemed not to love the line that Richardson drew, but said, well, if you use redacted, that's going to give an implication. And we're not going to call that contextual implication. We're going to say that's the same thing as the name itself. Trying to make sense of all those lines is a little difficult, I think, and apply it. And I'm wondering, what do you think the point of Bruton is, and why isn't the point of Bruton implicated here? As I mentioned earlier, I think the core triggering condition that the court was worried about in Bruton was an unambiguous direct accusation from a co-defendant against another person sitting next to them in the courtroom that couldn't be cross-examined when it came to a testimonial statement. And that's also the phrase that the court used in Gray to say what kind of statements they were bringing within the Bruton rule, but only slightly expanding it. The court continued to use the phrase, facially incriminating, which it took from Richardson. The Gray court continued to say, directly accusatory, not indirectly accusatory by way of connection to things that the jury heard elsewhere at trial. And to sort of double back a little bit to the beginning of Your Honor's question, I think there's plenty in Gray, even beyond that, that fully accords the line that this court drew in Richardson. So Gray also takes care to say, all the practical effects that the court was worried about in Richardson, those won't be implicated by the rule we're drawing here today about redacted, redacted, and blank, blank. It said that's easily identifiable before trial and fixable, similar to the way that nicknames are. It's not going to cause mistrials. It's not going to cause unpredictable appeals. And the court, even later in the opinion, as we've been discussing, gave the example of redacting using neutral nouns and pronouns. And then even after that, pointed to lower court cases where the court said, we understand the court's been doing this approach we're advocating for here and have had no problems. And one of those was the Eighth Circuit Garcia case, where there the court redacted a statement to refer to the confessing defendant being instructed to give drugs to, rather than the defendant's name, Garcia, give drugs to someone. And that was a case the court cited approvingly. And Mr. Shanmugam might have a problem with Richardson in making this argument. But I think what he's suggesting is the point of Bruton is still implicated when it is likely that the jury will come to the conclusion that it's about the defendant. And you're saying that's not good enough. No, because I think Richardson says, even if it's possible for jurors to draw connections, and in some cases it might be a very straightforward connection, because we trust limiting instructions almost invariably in all circumstances. We can trust them again when there is sort of an inflection point or a gate point where the jury isn't being told instantaneously the other defendant did it, but is just being told a piece of ambiguous information and later has to form that realization. How can you say that about Richardson when Richardson involved a confession that didn't implicate the involvement of anyone else? That's the whole point of Richardson. You're taking Richardson far beyond its footnote and far beyond its facts. I, of course, agree that the factual facts in Richardson, which the court, I think, mentioned twice, were that in that particular confession, the mention of the third party being there was able to be taken out entirely. But the logic the court used and the split it granted cert to resolve was about this contextual implication doctrine that lower courts were using, or what was also called the evidentiary linkage doctrine, where they would look at greater context to decide whether inference could be made. Ms. Flynn, you're right that there's language in Richardson about inferences, no question. But, I mean, here's the holding of Richardson, right? The Confrontation Clause isn't violated by the admission of a non-testifying codefendant's confession with a proper limiting instruction when, as here, the confession is redacted to eliminate not only the defendant's name, but any reference to his or her existence. I mean, that's the holding of Richardson. There is no reference in the confession to the existence of the defendant. And yet, it turned out that there were other things that the jury could link up. This piece of testimony and that piece of testimony, and all of a sudden, it was like, oh, he must have been involved in that thing that the confession was talking about, too. But this was a confession that gave you nothing to identify, to target, or so on. And that is really far removed from the kinds of confessions that would fall within your rule. I disagree, because in either case, the incrimination only arises later, after the jury instruction can intervene and stop the jury from starting down that path of even thinking about what this confession, or what the details in the confession, mean as to somebody else. And again, in the circumstance here, the jury could well reason that no accusation was made. And this is just how Mr. Stilwell, the kind of answers that he gave to the interrogating officers. The other thing I'd say about the actual holding of Gray, of course, there's the footnote. And of course, it was about an existence. But if all that Richardson stood for was that confessions that don't refer to the existence of another person, if that is all that the court took from it, then I think Gray could have been a very short opinion. There is no dispute in that case that the productive confession still referred to the existence of other people. I agree with you that Gray took seriously the language of Richardson as to inferences. But it took it seriously, and then it said there are inferences, and there are inferences. And Gray, again, said don't take that like gospel. There are inferences, and there are inferences. And when you have an inference that the jury can very easily, and the bar should be high, but very easily, and indeed possibly at the very moment that the confession is introduced, that the jury just says, well, she is obviously the person sitting next to him at the defense table. When you have something like that, you can't be faithful to Bruton or Gray or even Richardson if you allow that confession to come in. But I guess I would say to that is that Gray took pains to say the kind of inference there is one that arises instantly without jurors having to know anything else about the government's case. Here, Petitioner's whole argument is based on knowing the other details of the crime that would match up with the details that were in the redacted confession. It apparently also depends on what the other defendants or the arguments they're making in the case, because he keeps emphasizing that some of the defendants were only making jurisdictional arguments. And that's the kind of inquiry that Gray also said that is not what we're talking about when we're taking this narrow category of redacted confessions or putting it within the scope of the Bruton rule. I was going to move on to a slightly separate point. I mean, Bruton's animated rationale they talked about was a direct accusation. But if the danger here is just the fact that we don't want a jury to ever hear a co-defendant confession that refers to somebody else's participation, I mean, we have those statements all the time. If they're non-testimonial, they come into trial. And they're things the jury can consider. That's the co-conspirator exception to the hearsay rule. And we trust that the jury can sift through the evidence and reliably judge the defendant's guilt in that circumstance. And so I don't think the fact that we just have a confession that refers to somebody else's existence is so powerful that we don't think limiting instructions can work. Can you imagine any circumstances in which there would be Bruton violations left? Because it seems to me that on the government's understanding of the doctrine, it's like, well, Bruton said it can't be blatant. Then Richardson said it's not a problem if we can dispute the scope of Richardson. But if the name is not there, Gray said, well, come on. You can't say redacted, redacted, redacted, deleted, deleted, deleted. And now if the case goes your way, all lower courts know that all you have to do is say someone, she, or he, and it won't be a problem. And then you can fix every co-conspirator, I mean, sorry, every co-defendant statement to not be a problem. I mean, is that right? I think that the Rule 14 severance inquiry can play a role here. Courts can require further redactions or perhaps get rid of details that they don't think the government needs to have in light of the competing interests in the case and the prejudice to the defendant. So I don't think we'll be in a world where every confession, yeah, I think we can take these common sense considerations into account. But trial courts are in the best position to weigh those. In the same way as you would under 403, right? Yes, exactly. And I think with both those determinations, yes, there's an abuse of discretion standard on appeal. But that's for a good reason. Because we trust the district court or the trial court in the state system to be making, to be closest to all of the facts, all of the context, what's going on in the case, and to make judgment calls that we're not going to open up to relitigation on appeal where defense attorneys can just flyspeck the record and say, well, there is that mention of this detail, which on top of that other mention of this detail could be a problem. But I mean, I guess I hear what you're saying is that all of this would now be litigated through the severance reviewing whether the trial court abused its discretion in refusing to grant severance. But there would be no more real Bruton violations because everybody would know what to do going forward, which is really narrowing Bruton down. I think that's how we can talk about what the state of play is with respect to the circuits. I very much disagree with my friend's account of what the actual rule is in the majority of circuits. But yes, I think if Bruton has right-line rules that everybody can identify pre-trial and six, that's a virtue, especially when we've had other cases from this court saying that, for instance, co-defendant confessions can come in, even when they have a name, so long as they're offered for a different purpose. I think keeping Bruton narrow is consistent with this court's cases. Isn't it true that there are two analytically pure, conceptually pure ways in which the fundamental issue here could be addressed? One, but they both have their practical problems. One is to say, as was previously the rule, that if the jury is instructed to consider it only against the person who confessed, that cures the problem. The other is to recognize that this issue is never going to arise unless there is some risk or some reason to fear that the confession is going to be held by the jury against the non-testifying co-defendant, because they just can't put that out of their minds. It's not realistic to expect them to do that. So if you take either of those positions, you've got a clear rationale. The court has not done that. It has drawn lines between these two poles. And so it may be artificial to expect that when you draw that line, it's always going to be able to say, why did you draw it there? Because the rationale could push you further, or it could push you back. So there hasn't been that much discussion here today about why both of those, the rejection of both of those, is based on essentially practical concerns. Because one, it was found in Bruton and Gray to present too much of a risk for the defendant. And the other, I think, leads you to the conclusion you just can't have joint trials whenever this issue pops up. So why draw the line? Unless we're going to go to one extreme or the other, there's got to be a line. It's not going to be able to defend it on, say this is obviously exactly the right place. Why should the line be drawn where you think it should be drawn? Well, I do think a big part of the analysis is what you were alluding to, is the workability of any line that allows you to start taking context into account. And of course, I will grant there will be hypotheticals where sometimes that context is readily easier for jurors to perhaps make that connection if they disregard the instruction than others. But I don't know how you draw a line between that case and ones where there's six pieces of evidence a juror would have to consider. So then we're in a world where you have this kind of totality of the circumstances standard that my friend is proposing here, where combined with such a low threshold standard that we are going to be forced to avoid the risks of a color reversal, forced to abandon a joint trial in most instances. And I think that Richardson explained why that's not a palatable outcome. I think Gray made sure to hew that same line. And I believe the amicus brief by other states was already brought up here today. But the states are concerned about that same world in which the criminal justice system and the interests, which are important interests, not just to prosecutors, but also to witnesses, to courts, and to defendants, all that is sacrificed to get rid of joint trials whenever we have, for instance, a two-defendant trial with a confession. Thank you, counsel. Justice Thomas? Justice Alito? Justice Sotomayor? You're not asking us to overrule Bruton, Gray, or Richardson, correct? No, we're not asking you to overrule any of those. And so whatever Justice Alito thinks the line should have been originally, we take the line as it exists, correct? Of course. And Gray basically set a line different than Richardson, correct? It said that you couldn't take Richardson's point about inferences at face value. Went on for a page and a half explaining why, correct? Gray distinguished the kind of inferences. The inference that was discussing there was the inference from, I know this confession has been changed to what is the reason? And that's not what we're talking about in this case. Well, I appreciate that. But the point is that the Second Circuit Four Corners approach was before Gray, correct? And it's not revisited post-Gray. It has more recent precedents applying the same approach, but... But it has not dealt with Gray directly. I think the Second Circuit is taking this court's word about neutral reactions like other guys or someone and adhering to Gray. But you do admit that some contextual reasoning like the one-eyed man or an alias can't be looked at? I think the jury could probably just see the one-eyed man. I think that's slightly different, but I will... Yes, we have not disputed nicknames, but I think trying to draw a line around nicknames or aliases doesn't take you to the point we're at today. And also, this is just not a nickname alter-ego case. Justice Kagan? I had a question for you, but now I'm sort of intrigued. Do you think the one-eyed man concussion can come in? Sorry, no, no. I just mean that that's not... That is facial because it's a connection. The jury doesn't have to hear the trial evidence to try to piece up a physical description with the person sitting in the courtroom. I see. OK. You talked a lot about administrability. And, you know, fair enough. But I guess it would be more fair if we didn't have a lot of experience to draw on. There are a lot of court circuits that actually are using Mr. Shanmugam's rule as we speak. And as far as I can see, there's been basically no presentation of evidence that anything is going very wrong in those circuits, that there are fewer joint trials, that there are all kinds of terrible situations which people can't get out of. It seems to work pretty well, actually, given, I mean, you said something like But I don't think any courts are using a low-threshold standard. They're using a fairly high-threshold standard. And with a fairly high-threshold standard, it all seems to work just fine. Do you have any evidence to the contrary? So, first, what I'd say is that no court is using as low of a standard as I think you suggested is what Petitioner is offering here. With respect to those courts that are looking at context in some circumstances, I think I would spot them, the 1st, the 3rd, the 11th, and the D.C., and even with the 1st and the 3rd, there are conflicting decisions saying we don't look at trial evidence, we don't look at context in that respect. So it's kind of unclear to figure out what's actually going on on the ground in these circuits. But if you are... I'm trying to say that that's true even of the 2nd Circuit. You know that if you actually look at second opinions, there are plenty of 2nd Circuit opinions that are looking outside the four corners and trying to make common-sense judgments. Right. And I think that those common-sense judgments, if they're not under Bruton, can be taken care of through other rules of criminal procedure and evidence. But to point to an example of what we're kind of worried about with Petitioner's approach, Petitioner relies on a case from the 11th Circuit called Schwartz. And there, the 11th Circuit did say we have to look at the whole record to figure out what are the inferences the juries can draw. And the court then went through six double-column F3 pages going through the evidence in order, and the arguments made by the prosecutors to then conduct the Bruton analysis. There's also a footnote in that case where they acknowledge that they'd faced a case that had at least facially similar facts and came out a different way on the Bruton question. So that's the kind of, you know, everything's up for relitigation on appeal and risk of inconsistent ground rules, but I think it's going to make this very difficult going forward with a contextual inquiry like the one here. Thank you. Justice Gorsuch? Justice Kavanaugh? Most of the states haven't been doing anything like what Petitioner says here. Is that your understanding of the state court situation? We haven't seen a comprehensive survey of all of the states, so no, our understanding is not that the majority rule is to look at context, and certainly not the way that Petitioner is offering here. And I just want to look at Gray again, and Gray and Richardson, and try to parse this. If we're going to try to give credence to both cases, as Justice Sotomayor rightly says, so at the top of 196, Gray says, Richardson's inferences involve statements that did not refer directly to the defendant himself and which became incriminating only when linked with evidence introduced later at trial. Okay, so then it goes on and says, Gray goes on to say, here's how we're going to distinguish Richardson. At least I read these as the two key sentences. The inferences at issue here involve statements that despite redaction obviously refer directly to someone, often obviously the defendant, and which involve inferences that a jury ordinarily could make immediately, even were the confession the very first item introduced at trial. Moreover, the redacted confession with the blank prominent on its face, in Richardson's words, facially incriminates the co-defendant. So I guess my, in reading that, I mean, it seems like Gray itself doesn't, you know, those two sentences in Gray itself, I think, make clear that you can't look at, make the kind of contextual inference that Petitioner's talking about here. At least that's how I read it. I'm curious, you know, is that a correct way to read those two sentences or what am I missing? I fully agree with your reading of those two sentences and that's how we, you know, that is the basis for our position that Gray did not cut back on Richardson's discussion about contextual implication or the need to, or how inferences that depend on linkage to other evidence at trial are outside of Bruton. Justice Baird? Justice Jackson? Can I just pause as a quick hypo and just have you quickly react to it? So you keep mentioning the original confession that doesn't directly implicate the person. So I'm imagining a confession in which the co-defendant says, I killed her, but somebody else helped me. That's the confession. All right. So the first question I have is about the government maintaining that it would have to sever or complaining that it might have to sever in that situation. Wouldn't there be the option for the government not to use that statement in the joint trial? That's one option, right, that the government would have. That is an option the government would have. I would say that in Richardson, the court... No, I understand, but I'm just explaining. So the government could not use that statement at all. I suppose the government could redact it so it just said, I killed her, period, and not, but somebody else helped me, right? They could. I think there's, as I think came up earlier in the argument, there's competing interests when you're changing a defendant's confession to suggest something that they didn't quite say that actually changes the degree of culpability. All right, so if the government wants to use in the joint trial, I killed her, but somebody else helped me, what if the government's theory of the case is that the defendant is the somebody else and the government puts on all kinds of trial evidence trying to show that related to the confession? Are you saying the court could not, that we don't have a Bruton problem in that situation? If the government puts forward that evidence and connects it to the confession, saying something like, you heard that confession earlier, who do you think that somebody else is? It's probably that person we've been seeing. It's not the problem. But if they say the confession is the most important piece of evidence in this case, the confession says, and they blow it up really big, I killed her, but somebody else helped me, and there's nobody else involved in this at all, the government is very clear there are only two people sitting at the table, and they keep playing the confession and suggesting that we have two people and a confession that links or implicates two people, you're saying no Bruton problem. If in that situation where the prosecutor is saying the thing you have to consider to judge this other defendant guilty is the confession and saying, emphasizing the confession had two people, and who do you think it is? Final question, do we need a jury instruction for that confession, and if so, why? If you're right that direct implication is really all that gives rise to a confrontation clause problem, I don't understand why we even need a jury instruction related to, look at this only with this defendant. My position is that you need a... A limiting instruction. Why do we need a limiting instruction in that case? Because the confession is still testimonial and it's still saying something that puts... The only reason why we need it is because the jury might draw the inference that somebody else is the defendant, right? No, because my point is that the question of whether something needs a limiting instruction because it would be... The confrontation clause keeps it from being evidence against other people in the case is distinct from the Bruton question. The Bruton question is, what do we need to... What is our fear that the limiting instruction will be ignored? But as Melinda Zia says, as long as it... I'm sorry, can you just answer... Sorry.  do we need a limiting instruction? I thought we needed it to keep the jury from inferring that somebody else was the other defendant and he wouldn't have an opportunity to cross-examine. But I don't know whether your answer is yes, we need it for that hypo, or no, we don't. Yes, we need the limiting instruction. Why? Because it's a testimonial statement that makes... That could, if it were considered... If it were admitted as evidence against the defendant, could make a fact... But you're saying it can only be admitted as evidence against the defendant if it has his name in it? No. We're saying... To try to illustrate my point, even if the confession just said, I killed her, you would still need the limiting instruction because it's a testimonial statement that can't be cross-examined, that can't be evidence against the defendant, regardless of whether it uses another defendant's name. The separate question is Bruton, about when we think that limiting instruction won't be effective. And that's where we're attaching the directly accusatory label that we get from Gray and we get from Bruton. Thanks, Louise. Thank you, counsel. Rebuttal, Mr. Shanmugam? Let's start with the government's approach. Ms. Flynn says this morning that the government's approach is a four-corners rule in the vast majority of cases. But that rule, it seems to me, suffers from two problems. The first is that it's arbitrary because there will be circumstances in which a confession that uses a placeholder will actually create a much stronger inference that the confession implicated the non-confessing defendant than a confession using brackets. Take the example, for instance, of a confession that uses brackets but in a case involving multiple defendants. But not only is it arbitrary, I would submit that it is difficult to administer and Ms. Flynn's answers to Justice Kagan's hypothetical well illustrate why. In the John and Mary hypothetical, government seems to take the position that the woman and I robbed Bill would be admissible. I take it that the government's position would be that if the confession instead said, my girlfriend and I robbed Bill, that that would not be admissible because that would be an identification. What about a confession that says, my friend M and I robbed Bill, the theory being that John had multiple friends named M? Who knows? The one-eyed man is an identification. What about the person who has a tattoo of a green Jayhawk but it's on his back, where you need to have evidence that he had such a tattoo? And so the government's rule doesn't have the benefit of clarity that the government suggests. Now, what about our approach? Other than faulting Judge Choflat for writing a lengthy opinion, the government doesn't really identify any problems in application with our rule. And we would submit that it's the rule of six circuits, but whether it's six circuits or four, it's the rule in many states. We cite three in our reply brief. I can assure the Court that there are many more. The government doesn't cite any difficulties in administration. And this case well illustrates the problem with the delta between our respective positions. I would really urge the Court to reread the confession in this case and to put itself in the position of a reasonable juror. A reasonable juror would surely, surely wonder why the interviewing agent here didn't ask the question, who is this other person who you keep talking about? And if the individual had, in fact, referred to the other person, either the agent would have asked that question, which would have provided clarity one way or the other, or a defense counsel equipped with a copy of the prior statement under Jenks would have asked as the first question, did you ask who this person was? And if the answer is no, that would obviate the Bruton problem. But obviously a defense counsel could not have done that here. And then finally, the point of Bruton, which Justice Kavanaugh asked about. The point of Bruton is, as this Court said in Bruton, that co-defendant confessions are devastating and that by virtue of that devastating prejudice, there is, in the words of the Court, a substantial risk that a jury will consider the co-defendant's confession despite a limiting instruction. And not just the majority of the Court in Bruton, but jurists from Justice Frankfurter to Judge Hand to Judge Friendly to Judge Garth in one of the leading post-Gray opinions to Judge Easterbrook have all recognized that this is one of the circumstances in which juries cannot be expected to perform the task of considering evidence, substantive evidence of guilt, as to one defendant but not another. I'm minded of a familiar phrase from a Fifth Circuit opinion, the exact provenance of which is unclear. If you throw a skunk in the jury box, you can't instruct the jurors not to smell it. And I would submit that this is a case in which the government not only threw a skunk into the jury box, but pointed to it repeatedly, and the jury could hardly be expected to ignore it. And the government's approach here would bless that conduct, and it would really contravene the first principle of the law, which is common sense. Trial judges are well-equipped to apply common sense, to make common-sense judgments about whether a particular confession in fact identifies a non-confessing defendant. And again, to revert to the words of Judge Easterbrook, if this Court were to adopt the government's rule, it really would undo the Bruton rule in practical effect. And so we ask the Court to vacate the judgment of the Second Circuit and to give Petitioner the opportunity to have a new trial free of this unconfronted confession. Thank you. Thank you, Counsel. The case is submitted.